# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black 2019 Dodge Charger (In-vehicle Infotainment)<br>California License Plate 8YCK096 VIN 623025<br>Seized as FP&F No. 2023565100000301 Item: 001 | Case No.  '22 MJ04163 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC Sec. 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Salvador Diaz Jr*
*Applicant's signature*

Saldavor Diaz Jr, U.S. Border Patrol Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

Date: November 10, 2022

*Judge's signature*

City and state: San Diego, California     Hon. Michael S. Berg, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A

VEHICLE TO BE SEARCHED

The following vehicle is to be searched:
> Black 2019 Dodge Charger (In-vehicle Infotainment System)
> California License Plate 8YCK096 VIN 623025
> Seized as FP&F No. 2023565100000301 Item: 001
> (the "Subject Vehicle")

Locations to be searched include hardware and software associated with the infotainment and telematics system installed within the vehicle and all parts and containers therein or part of the Subject Vehicle.

The Subject Vehicle is currently in the possession of Customs and Border Protection at 9020 Airway Road, Otay Mesa, CA 92154.

## ATTACHMENT B
ITEMS TO BE SEIZED

The following evidence to be search for and seized pertains to a violation of Title 8, United States Code, Sections 1324:

1. Infotainment (In-car entertainment or In-vehicle infotainment) and telematics systems acquired via logical and physical acquisition, from and including September 28, 2022, to and including October 28, 2022 to include:

    a. Mobile equipment identifiers, such as MSID, IMSI, IMEI, ESN and any other equipment identifiers from a USB or Bluetooth connected device;

    b. Call logs and SMS messages sent from a USB or Bluetooth connected device through the vehicle's infotainment and telematics systems;

    c. Contact list information to include but not limited to: contact names, phone numbers, unique contact photos, email addresses, and physical addresses synced to the vehicle from a USB or Bluetooth connected device that tend to place in context, identify the creator or recipient of, the calls recorded in the call logs, voice recordings, or messages sent or received;

    d. Voice recordings made by an occupant and stored within the vehicle's infotainment and telematics systems;

    e. GPS location data and navigation information to include but not limited to: vehicle created trackpoints and tracklogs, user inputted destinations, and routes; and

    f. Timestamp and location data associated with vehicle events to include, for example, vehicle engine ignition, gear shift changes, lights turning on/off, doors opening/closing, odometer readings, and Wi-Fi connections.

2. Electronic records, communications, and data for the period from September 28, 2022, to and including October 28, 2022 pursuant to this warrant:

## ATTACHMENT B

a. tending to identify the user of, or persons with control over or access to, the Subject Vehicle, and any devices connected to the Infotainment;

b. tending to identify traveling to and from and geographical locations that support or contradict the statements of Defendant;

c. tending to identify attempts to transport or move noncitizens without legal status into and throughout the United States;

d. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate the transportation or movement of non-citizens without legal status into and throughout the United States;

e. tending to identify co-conspirators, criminal associates, or others involved the transportation or movement of non-citizens without legal status into and throughout the United States;

f. tending to identify travel to or presence at locations involved in the involved the transportation or movement of non-citizens without legal status into and throughout the United States;

g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

h. tending to identify the account user's state of mind, including knowledge, motive, and voluntariness, regarding the offenses under investigation;

which are evidence of crime in a violation of Title 8, United States Code, Section 1324. The seizure and search of the infotainment and telematics systems shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the digital devices may be searched for the evidence above.

# AFFIDAVIT

I, Agent Salvador Diaz Jr, United States Border Patrol, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Black 2019 Dodge Charger (In-vehicle Infotainment System)
> California License Plate 8YCK096 VIN 623025
> Seized as FP&F No. 2023565100000301 Item: 001
> (the "Subject Vehicle")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 8, United States Code, Section 1324 (alien smuggling) as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Aaron Perez ("Defendant") for knowingly transporting six aliens within the United States to help said aliens remain in the United States illegally. Defendant was arrested on October 28, 2022, and is pending a criminal case in the Southern District of California. For the reasons set forth herein, I believe there is probable cause to believe that the internal Infotainment System in the Subject Vehicle contains evidence of alien-smuggling, and I believe this Infotainment System contains evidence relevant to Defendant's offenses. The Subject Vehicle and Infotainment System is currently in the custody of Customs and Border Protection at 9020 Airway Road, Otay Mesa, CA 92154.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I am a Border Patrol Agent with the United States Border Patrol ("USBP") of the United States Department of Homeland Security, Bureau of Customs and Border Protection. I have been an agent for approximately 13 years. I am assigned to the San Diego Sector Intelligence Unit – San Clemente Station Intelligence Team. Over the course of my time at the Sector Intelligence Unit, my primary duties include the collection of information, the analysis of information and creation of intelligence reports and their dissemination across law enforcement partners. These efforts develop and enhance the operational knowledge of our adversaries. Through the course of my official duties over the past 13 years I have prepared criminal cases and executed warrants for violations of 8 U.S.C. § 1324 (Human smuggling) and 8 U.S.C. § 1326 (Reentry of removed aliens) in the Southern District of California and Central District of California.

5. In the past several years, I have experience in the exploitation of electronic devices such as cellular phones and global positioning devices (GPS). I have used the lawfully obtained information to assist in alien smuggling and narcotic smuggling cases.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.

7. Through the course of my training, experience, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for human smugglers to work in concert with other individuals and to do so by load vehicles to transport the non-citizens without legal status and utilizing social networking and messaging applications such as WhatsApp and Facebook through digital devices such as tablets, cellular telephones, and computers. This is particularly true in cases involving the transportation and movement of non-citizens without legal status into and throughout the United States. Typically, human smugglers including load drivers or scouts

for load drivers (those who look-out for law enforcement activity) are in digital or telephonic contact with co-conspirators immediately prior to and following the crossing of the non-citizens without legal status, at which time they receive instructions on how, where and when to pick-up and transport these non-citizens without legal status. Human smugglers and their organizations use cellular and digital devices, in part, because these individuals believe law enforcement cannot track the originating and destination communications. Because certain vehicles come with what is known as "infotainment systems," human smugglers may connect their cellular phones and other smart devices to these systems to assist with navigation.

8. As for infotainment systems, these systems in vehicles provide occupants with features and controls including entertainment, hands-free calling, navigation, voice commands, and vehicle controls. The infotainment system typically includes an in-dash screen with hard or soft button or touchscreen controls. Infotainment systems act as the connection between the user, their device, and the vehicle. Telematics systems, on the other hand, act as the connection between the vehicle and the outside world. Telematics operate to: create notifications of a vehicle collision, monitor vehicle operating systems and send that information to a central hub for fleet management, and allow the user to have the vehicle remotely unlocked.

9. Based upon my training and experience and consultation with law enforcement officers experienced in alien smuggling, and all facts and opinions set forth in this affidavit, I submit the following:

    a. Alien smugglers will use GPS devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

    b. Alien smugglers and their co-conspirators will use GPS devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations; and

    c. Alien smugglers will use GPS devices to direct drivers to synchronize an exact drop off and/or pickup time of their illegal cargo.

10.     In-vehicle Infotainment Systems can and often do contain electronic records, including location data and information like what is stored on a cell phone such as telephone numbers, text messages, contact lists, or identifying information for individuals accessing the Infotainment System directly or remotely through phones and/or computers. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Infotainment System. Specifically, based upon my training, education, and experience investigating alien smuggling, I have learned that searches of Infotainment Systems sometime yields evidence:

a. tending to identify the user of, or persons with control over or access to, the Subject Vehicle, and any devices connected to the Infotainment;

b. tending to identify traveling to and from and geographical locations that support or contradict the statements of Defendant;

c. tending to identify attempts to transport or move noncitizens without legal status into and throughout the United States;

d. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation or movement of non-citizens without legal status into and throughout the United States;

e. tending to identify co-conspirators, criminal associates, or others involved the transportation or movement of non-citizens without legal status into and throughout the United States;

f. tending to identify travel to or presence at locations involved in the involved the transportation or movement of non-citizens without legal status into and throughout the United States;

g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

    h. tending to identify the account user's state of mind, including knowledge, motive, and voluntariness, regarding the offenses under investigation;

11. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with U.S. Border Patrol Agents and my personal observations and knowledge.

## FACTS SUPPORTING PROBABLE CAUSE

12. On October 28, 2022, at approximately 11:20 a.m., the San Clemente Border Patrol Station Dispatch received a call from the San Diego Sector Tactical Communication Center relaying information from a concerned citizen reporting that a possible alien smuggling event had taken place. The concerned citizen identified a Black Dodge Charger bearing California license plate, 8YCK096 as the suspected alien smuggling vehicle.

13. According to Border Patrol Agent (BPA) F. Ramirez's arrest report, at approximately 11:22 a.m., he responded to the area of the citizen report. BPA Ramirez was traveling west on Basilone Road when he observed a Black Dodge Charge traveling east. BPA Ramirez observed three people through the front windshield in the front seats of the vehicle. In BPA Ramirez' experience, Dodge Chargers come standard with two bucket seats in the front seat area. BPA Ramirez conducted a u-turn and proceeded to follow the Dodge Charger. The Dodge Charger got on the southbound ramp to Interstate 5, (I-5) from Basilone Road.

14. BPA Ramirez followed close enough to confirm the vehicle's license plate, which was CA plate 8YCK096, which is the vehicle reported earlier for suspected alien smuggling. The vehicle continued to travel south on I-5 in lane 2. At one point, BPA Ramirez was able to observe two subjects in the front passenger seat, meant for one passenger, trying to conceal themselves by slouching and turning their faces away from

BPA Ramirez' direction. The two front passengers appeared not to have their seatbelts on. BPA Ramirez was also able to identify the driver. The driver had prescription glasses, black shirt, heavy set, and with a mustache.

15. BPA Ramirez was also able to observe the silhouette of more than three subjects in the rear passenger seat. To his knowledge, Dodge Chargers can only seat three people safely in the rear seat with seat belts. Based on his observations, BPA Ramirez reasonably suspected that the Black Dodge Charger was currently involved with criminal activity and possibly smuggling illegal subjects.

16. The vehicle yielded to BPA Ramirez one half mile south of the Las Pulgas Road exit. Agents approached the vehicle and identified themselves to the driver, later identified as Defendant and performed an immigration inspection on the driver and all subjects in the vehicle. Defendant claimed to be a United States citizen and the six passengers each admitted to being citizens of Mexico and further admitted that they did not have any documentation which would allow them to be legally present in the United States. At approximately 11:36 a.m., Defendant was placed under arrest for violation of Title 8, United States Code, Section 1324 (Alien Smuggling) and was secured in a marked United States Border Patrol vehicle. The other six subjects were placed under arrest for being illegally present in the United States.

17. Border Patrol Agents interviewed three of the aliens found in Defendant's vehicle.

    a. Mr. Javier Garcia Sanchez stated he was born in Mexico and is a citizen of Mexico without any immigration documents entitling him to enter or be in the United States legally. Mr. Garcia stated he crossed into the United States earlier that day by jumping over a fence near Tijuana. An unknown male instructed Mr. Garcia to wait in a bush near the highway for a black car that was going to take him to Escondido, California. Mr. Garcia stated the driver of the black car instructed him to get into the vehicle along with the five other people he was with. Mr. Garcia said they were in the vehicle for an hour to

an hour and half and the car did not stop. During the car ride, Mr. Garcia observed the driver on the phone with someone with an area code of "825." Mr. Garcia identified the driver as Defendant in a photo line-up.

    b.    Ms. Emilia Del Carmen Sanchez-Chacon stated she was born in Mexico and is a citizen of Mexico without any immigration documents entitling her to enter or be in the United States legally. Ms. Sanchez stated she crossed into the United States on October 27, 2022, around 6:00 PM by walking through the desert/mountains near Tijuana, Mexico with four other people. Ms. Sanchez stated they walked to the meet-up location around 8:00 AM where they were instructed to wait to be picked up. Two younger males joined her group along the way. After the vehicle picked them up, Ms. Sanchez stated they drove without stopping. Ms. Sanchez stated the driver drove aggressively in attempt to get away from a vehicle that was following them until they were ultimately apprehended by Border Patrol Agents. Ms. Sanchez identified the driver as Defendant in a photo line-up.

    c.    Ms. Ana Laura Santos Bautista stated she was born in Mexico and is a citizen of Mexico without any immigration documents entitling her to enter or be in the United States legally. Ms. Santos stated she crossed into the United States on October 28, 2022, around 7:00 AM near Otay Mesa, California by jumping over the fence. An unknown male instructed Ms. Santos to wait in the brush near the highway for a vehicle for one to two hours. Ms. Santos identified the driver of the vehicle that picked them up as Defendant in a photo line-up.

18.    Defendant was advised of his rights under Miranda and elected to make a statement. During the interview, Defendant stated he lives in Escondido, California. Defendant reported that he went to work in that morning, and then went on a drive to San Marcos, California. While driving around in San Marcos, Defendant stated the six passengers came up to him and asked him for a ride to Oceanside, California. Defendant stated he felt they might be in danger, so he agreed to give them a ride to Oceanside because

he was already driving that direction. Defendant stated immediately after he started driving to Oceanside, he noticed he was being followed by a Grey four-door Hyundai, with two people in it. Defendant stated the car was driving aggressively and, in an effort, to get away from the car, he sideswiped a fire hydrant on the driver's side of his car. Defendant stated the car followed him to Oceanside. Defendant stated to get away from the car, he drove northbound on I-5 until he exited on a random exit. Defendant denied that he was attempting to smuggle aliens and, ultimately, the interview was terminated.

19. The Subject Vehicle seized by a Border Patrol Agent was used in the commission of a crime and it was seized incident to Defendant's arrest. The Defendant was the driver and registered owner of the Subject Vehicle and had dominion and control of all the contents in the vehicle. The Subject Vehicle was searched and the contents were inventoried before it was seized. However, the Infotainment System internal to the Subject Vehicle was not searched at that time because Defendant did not provide consent.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the alien smuggling activities of Defendant, such as GPS locations, subscriber information, dates and time of use, as well as other digital information are stored in the Infotainment System in the Subject Vehicle.

21. Alien smuggling events require detailed an intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks prior to the event. Accordingly, I respectfully request permission to search the Infotainment System in the Subject Vehicle for information beginning on September 28, 2022, up to and including October 28, 2022.

# METHODOLOGY

22. With the approval of the Court in signing this warrant, agents executing this search warrant will employ the following procedures regarding the internal computer to the Infotainment System, including electronic storage media, in the Subject Vehicle that may contain data subject to seizure pursuant to this warrant.

23. The executing agents will determine the feasibility of obtaining forensic images of the Infotainment System from the Subject Vehicle. A forensic image is an exact physical copy of the hard drive or other media of the Infotainment System in the Subject Vehicle. A forensic image captures all the data on the hard drive or other media without the data being viewed and without changing the data. Absent unusual circumstances, it is essential that a forensic image be obtained prior to conducting any search of the data for information subject to seizure pursuant to this warrant. The feasibility decision will be based upon the nature of the device, the volume of data to be imaged, the need for and availability of computer forensics specialists, and the availability of the imaging tools required to suit the number and nature of devices found.

24. After obtaining a forensic image of the Infotainment System in the Subject Vehicle, the data will be analyzed to identify and extract data subject to seizure pursuant to this warrant. Analysis of the data following the creation of the forensic image can be a highly technical process requiring specific expertise, equipment and software.

25. Analyzing the contents of an Infotainment System, even without significant technical challenges, can be very challenging. Searching by keywords, for example, can yield many thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process for several reasons. The internal computer in the Infotainment System may have stored metadata and other information about a relevant electronic record – e.g., who created it, when and how it was created or downloaded or copied, when it was last accessed, when it was last modified, and when it was deleted. Keyword searches may also fail to discover relevant electronic records,

depending on how the records were created, stored, or used. In addition, a particular relevant piece of data does not exist in a vacuum. To determine who created, modified, copied, downloaded, transferred, communicated about, or deleted the data requires a search of other events that occurred on the Infotainment System in the time periods surrounding activity regarding the relevant data. Information about which user had logged in, whether users share passwords, whether the Infotainment System was connected to other electronic devices such as cellular phones, and whether the user accessed or used other programs or services in the time period surrounding events with the relevant data can help determine who was using the Infotainment System and/or the Subject Vehicle.

26. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

27. It is possible that the Infotainment System in the Subject Vehicle is not subject to forensic data acquisition or may have potentially relevant data stored that is not subject to such acquisition. Under either of those circumstances, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

28. The United States has not attempted to obtain this data by other means.

## CONCLUSION

29. Based on the facts and information set forth above, there is probable cause to believe that a search of the Infotainment System in the Subject Vehicle will yield evidence of Defendant's violations of Title 8, United States Code, Section 1324. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the Subject

1 | Vehicle, and seize the items listed in Attachment B using the above-described
2 | methodology.
3 | I swear the foregoing is true and correct to the best of my knowledge and belief.

*Salvador Diaz Jr*
Agent Salvador Diaz Jr
United States Border Patrol Agent

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this __10th__ day of November, 2022.

_____
Honorable Michael S. Berg
United States Magistrate Judge